UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHARAD K.C., | CASE NO. C25-2071JLR |
| Petitioner, | ORDER |
| v. | |
| PAMELA BONDI, et al., | |
| Respondents. | |

## I.  INTRODUCTION

Before the court is Petitioner Sharad K.C.'s petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Petition (Dkt. # 6); Reply (Dkt. # 12).)  Federal Respondents[1] oppose Petitioner's motion.  (Return (Dkt. # 10).)  The court has considered the parties' submissions, the relevant portions of the record, and the governing

---

[1] The Federal Respondents are U.S. Attorney General Pamela Bondi, U.S. Department of Homeland Security ("DHS") Secretary Kristi Noem, U.S. Immigration and Customs Enforcement ("ICE"), and ICE Seattle Field Office Director Cammilla Wamsley.  (Petition at 4-5.)

ORDER - 1

law. Being fully advised, the court GRANTS Petitioner's petition for a writ of habeas corpus.

## II.  BACKGROUND

Petitioner is a citizen of Nepal who is currently confined at the Northwest Immigration Processing Center ("NWIPC") in Tacoma, Washington. (Petition at 1-2.) Petitioner fled Nepal based on his fear of retribution for his allegiance to Nepal's Congress Party. (*Id*. at 6.) He entered the United States without inspection or admission on January 21, 2025, and was taken into custody. (Strzelczyk Decl. (Dkt. # 11) ¶¶ 4-5.) United States Customs and Border Control ("CBP") determined that Petitioner was not admissible and issued an expedited order of removal on January 22, 2025, pursuant to Immigration and Naturalization Act ("INA") § 235(b)(1), codified at 8 U.S.C. § 1225(b)(1). (*Id*. ¶ 6.) On February 2, 2025, DHS transported Petitioner to the NWIPC. (*Id*. ¶ 7.)

On February 7, 2025, ICE, Office of Enforcement and Removal Operations ("ERO") provided Petitioner a travel document application. (*Id*. ¶ 8.) Federal Respondents assert that Petitioner refused to complete the application and that ERO subsequently informed him that he was required to assist in obtaining travel documents. (*Id*. ¶ 9.) Petitioner, however, represents that he only refused to complete the documents because he had a credible fear of persecution if he were to return to Nepal and, as a non-English speaker, did not want to sign documents he did not understand. (Reply at 3.) On February 14, 2025, after Petitioner expressed fear of torture if he were returned to Nepal, ICE referred his case to United States Citizenship and Immigration Services

ORDER - 2

("USCIS") to determine whether he was likely to be tortured in Nepal. (Strzelczyk Decl. ¶ 10.) USCIS determined that Petitioner did not have a credible fear of torture in Nepal and left his expedited removal order in place. (*Id.* ¶ 11.) On September 30, 2025, however, Respondents referred Petitioner to USCIS for a second credible fear determination pursuant to litigation challenging USCIS's credible fear screening process. (*Id.* ¶¶ 13-14.)

Petitioner filed this case on October 22, 2025. (Prop. Petition (Dkt. # 1).) Petitioner asserts that he cannot be returned to Nepal "given recent governmental upheaval there and the nation's apparent unwillingness to provide travel documents." (Petition at 6.) He further asserts that, as of the filing date of his petition, Nepali detainees at the NWIPC were informed that Nepal was not issuing travel documents and had not done so for the previous two months. (*Id.* at 7.) Accordingly, Petitioner contends that his removal to Nepal is not reasonably foreseeable and, as a result, his continued detention is unlawful. (*Id.*)

On October 27, 2025, the Honorable Michelle L. Peterson, United States Magistrate Judge, ordered Federal Respondents to show cause within three days why the petition should not be granted. (Service Order (Dkt. # 8).) She also ordered Federal Respondents to file a status update regarding any changes in Petitioner's custody status "as soon as possible." (*Id.* at 2.) Federal Respondents filed their return on October 30, 2025, and Petitioner filed a reply on November 3, 2025. (Return; Reply.) In his reply, Petitioner states that he was granted a credible fear interview on October 31, 2025. (Reply at 6 n.3.)

ORDER - 3

On November 13, 2025, Magistrate Judge Peterson noted that it was unclear whether a credible fear determination had been made following that interview and ordered Federal Respondents to file a status update "clarifying whether Petitioner's credible fear process remains ongoing, under what statutory authority Respondents are currently detaining Petitioner, and any other developments in Petitioner's case." (11/13/25 Order (Dkt. # 13).) This action was reassigned to the undersigned the next day. (*See* 11/14/25 Dkt. Entry.)

Federal Respondents filed their first status report on November 21, 2025. (1st Status Report (Dkt. # 14).) They represented that Petitioner's credible fear interview took place on October 28, 2025, and that USCIS determined on November 2, 2025, that Petitioner did not have a credible fear of return to Nepal. (*Id.* (citing 2d Strzelczyk Decl. (Dkt. # 15) ¶¶ 4-5).) Federal Respondents stated that ICE intended to remove Petitioner to Nepal if he did not seek review of that determination by an Immigration Judge ("IJ") or if the IJ affirmed USCIS's determination. (*Id.* (citing 2d Strzelczyk Decl. ¶¶ 6, 8).) Federal Respondents further represented that ICE anticipated that it would be able to remove Petitioner to Nepal because Nepal had started to issue travel documents and ICE successfully effectuated a removal to Nepal from NWIPC in November 2025. (*Id.* (citing 2d Strzelczyk Decl. ¶¶ 9-10).) Respondents said nothing, however, about whether and when they requested travel documents for Petitioner. (*See generally id.*) In response, Petitioner asserted that his detention remains indefinite—and thus unlawful—because, as Federal Respondents acknowledged, it may take several months for Nepal to issue travel documents after USCIS requests them. (Report Resp. (Dkt. # 17).) Petitioner added that

ORDER - 4

his case cannot be compared to the November removal to Nepal because Federal Respondents provided no information about the circumstances that led to that removal. (*Id.*) Petitioner asked the court to release him "on conditions that require him to check in with immigration authorities and participate in the deportation if and when the travel documents are ever issued." (*Id.*)

On December 17, 2025, the court ordered Respondents to file a second status report regarding any further developments in Petitioner's case. (12/17/25 Min. Order (Dkt. # 18).) Respondents now state that Petitioner did not seek review of USCIS's Negative Credible Fear determination, that Petitioner now has a final order of removal, and that ICE anticipates that Petitioner will be removed to Nepal. (2d Status Report (Dkt. # 19) (citing Brown Supp. Decl. (Dkt. # 20) ¶¶ 4-6).) Respondents further represent that ICE is not exploring options for third-country removal. (Brown Supp. Decl. ¶ 7.) Respondents are silent, however, regarding whether they requested travel documents from Nepal to facilitate Petitioner's removal or when they made such a request. (*See generally id.*; 2d Status Report.)

### III. ANALYSIS

To succeed on a habeas petition, a petitioner must show that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas

jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Here, Petitioner asserts three grounds for habeas relief. First, he argues that his continued detention in immigration custody violates the Due Process Clause of the Fifth Amendment of the United States Constitution because there is no significant likelihood that he will be removed in the reasonably foreseeable future. (Petition at 14-15.) Second, he contends that any attempt by ICE to remove him to a third country would violate due process, the INA, the INA's implementing regulations, and the Administrative Procedure Act ("APA"). (*Id.* at 15-16.) Finally, he asserts that deportation to a third country other than Nepal would constitute punitive third-country banishment in violation of the Fifth and Eighth Amendments. (*Id.* at 16-17.) For the reasons set forth below, the court (1) agrees that the record does not demonstrate a significant likelihood that Petitioner will be removed in the reasonably foreseeable future, but (2) concludes that Petitioner's request for an order preventing ICE from removing him to a third country is not ripe for decision.

A.   **Indefinite Detention**

Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1), which applies to "arriving aliens" and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." (Strzelczyk Decl. ¶ 6); 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Typically, noncitizens who fall under § 1225(b)(1) are "subject to an expedited removal process that does not include a hearing before an [immigration judge] or review of the removal order[,]" but when a noncitizen indicates a

ORDER - 6

fear of persecution, they must be referred to USCIS an interview with an asylum officer. *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111-12 (W.D. Wash. 2019) (citations omitted). In general, § 1225(b)(1) mandates the detention of noncitizens for the entirety of the applicable proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 302-03 (2018).

The INA does not, however, authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause[.]" *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

Here, Petitioner has been detained for approximately eleven months, since January 21, 2025, and his first order of removal became final on March 24, 2025. (*See* Petition at 2, 14.) Therefore, his detention is not presumptively reasonable. *Zadvydas*, 533 U.S. at 701. The parties agree that the constitutionality of Petitioner's continued detention depends on the six factors this court set forth in *Banda v. McAleenan*: (1) the length of detention; (2) how long detention is likely to continue absent judicial intervention; (3) the conditions of detention; (4) the nature and extent of any delays in the removal caused by the petitioner; (5) the nature and extent of any delays caused by the government; and (6) the likelihood that the final proceedings will culminate in a final order of removal. (Return at 6 (citing *Banda*, 385 F. Supp. 3d at 1117-21); *see* Reply at 3.)

According to Respondents, the *Banda* factors weigh in favor of finding that Petitioner's continued detention is lawful because (1) the duration of Petitioner's detention should be measured from the conclusion of the credible fear process in November 2025, rather than from January 2025; (2) there is "no evidence" that ICE will be unable to obtain travel documents for Petitioner; (3) Petitioner is being detained at NWIPC; (4) Petitioner intentionally delayed the removal process when he refused to cooperate with completing travel paperwork in February 2025; (5) there is no evidence that the government intentionally delayed Petitioner's credible fear process; and (6) Petitioner is already subject to a final order of removal.  (Return at 6-7; *see generally* 1st Status Report; 2d Status Report.)  Petitioner counters that (1) the length of his detention should be measured from no later than the date his first order of removal became final in March 2025, because any subsequent delay in the credible fear process was due to Federal Respondents' use of a process that was found unlawful; (2) ICE informed Petitioner and others that Nepal had not issued travel documents for months, and it still has not obtained travel documents for Petitioner; (3) conditions at NWIPC have deteriorated over time; (4) any delay in the removal process is due to Federal Respondents' use of an unlawful credible fear process rather than any dilatory conduct by Petitioner; and (5) although Petitioner is now subject to a final order of removal, that should not count against him in light of Federal Respondents' own delays.  (*See* Reply at 3-6; *see generally* Report Resp.)

The court agrees with Petitioner that the *Banda* factors weigh against the constitutionality of his continued confinement.  The court is particularly persuaded by the

facts that (1) at least six months of Petitioner's detention is attributable to USCIS's prior use of an unlawful credible fear screening process and (2) ICE has made no showing that it has requested or received Nepali travel documents for Petitioner.  Furthermore, the evidence in the petition and in the record shows that ICE (1) informed Petitioner and other Nepali detainees earlier this year that Nepal was not issuing travel documents and had not accepted repatriations for months; (2) removed just one individual from NWIPC to Nepal during the pendency of this action; and (3) is silent as to whether it has successfully received travel documents for any other Nepali nationals since Petitioner filed this action.  (*See generally* Petition; 2d Strzelczyk Decl.; Brown Decl.)  Therefore, the court grants Petitioner's petition for writ of habeas corpus and orders Federal Respondents to facilitate his immediate release from detention, subject to appropriate conditions of supervision.

**B.   Removal to a Third Country**

Petitioner's second and third claims for relief challenge the legality of his possible removal to a third country.  (Petition at 15-17.)  Although a § 2241 habeas petition is the proper mechanism to challenge the legality of detention pending removal, *see Zadvydas*, 533 U.S. at 688, it cannot be used to seek relief for claims that are speculative or otherwise not ripe for review, *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985).  For a case to be ripe for decision, the issues presented must be "definite and concrete, not hypothetical or abstract." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (citing *R. Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)).  The ripeness doctrine "prevent[s] courts, through avoidance of premature adjudication,

from entangling themselves in abstract disagreements." *Id.* at 1138 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)). The court's "role is neither to issue advisory opinions nor declare rights in hypothetical cases, but to adjudicate live cases or controversies[.]" *Id.*

Here, Petitioner asserts that Federal Respondents have implemented a practice of punitive removal to third countries. (Petition at 15-17.) He has not, however, shown that Federal Respondents seek to remove him to any country other than Nepal (*see generally id.*), and Federal Respondents represent that ICE "is not exploring options for third[-]country removal at this time" (Brown Decl. ¶ 7). Therefore, Petitioner's claims are too speculative to form a live controversy regarding third-country removal. Because Petitioner's third-country removal claims are not ripe, the court declines to address them.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Petitioner's petition for writ of habeas corpus (Dkt. # 6). The court ORDERS Federal Respondents to release Petitioner from custody immediately, subject to appropriate conditions of release, including "conditions that require him to check in with immigration authorities and participate in the deportation if and when the travel documents are ever issued." (*See* Report Resp. (Dkt. # 17) at 2.) Within **TWENTY-FOUR (24)** hours of this order, Federal

//
//
//
//

Respondents must file a declaration confirming that Petitioner has been released from custody.

Dated this 23rd day of December, 2025.

JAMES L. ROBART
United States District Judge

ORDER - 11